Slip Op. 13-58

UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————— :
                                    :
PUJIANG TALENT DIAMOND TOOLS        :
CO., LTD.,                          :
                                    :
        Plaintiff,                  :
                                    :
            v.                      :   Before: Richard K. Eaton, Judge
                                    :
UNITED STATES,                      :   Court No. 11-00146
                                    :
        Defendant.                  :   **PUBLIC VERSION**
                                    :
———————————————————— :

OPINION

[Plaintiff's motion for judgment on the agency record is denied and the Department of Commerce's Rescission is sustained.]

Dated:  May 3, 2013

*John M. Houkom*, Quintana Law Group, APC, of Calabasas, CA, argued for plaintiff.  With him on the brief was *Andres F. Quintana*.

*Jane C. Dempsey,* Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant.  With her on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director.  Of counsel on the brief was *Nathaniel J. Halvorson*, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, D.C.

Eaton, Judge:  Before the court is plaintiff Pujiang Talent Diamond Tools Co., Ltd.'s

("plaintiff" or "Pujiang") motion for judgment on the agency record pursuant to USCIT Rule 56.2,

challenging the Department of Commerce's ("Commerce" or the "Department") rescission of

Pujiang's new shipper review under the antidumping duty order on diamond sawblades and parts

thereof from the People's Republic of China ("PRC").[1]  Pujiang is an exporter of diamond

sawblades.  Although required by the regulations, Pujiang did not provide the Department with the

certification or certifications required to establish that none of the merchandise Pujiang exported

during the period of review ("POR") had been produced by a company that exported subject

merchandise during the period of investigation ("POI").  *See* 19 C.F.R. § 351.214(b) (2010).

Rather, in its new shipper review questionnaire responses, plaintiff acknowledged that it exported,

during the POR, subject merchandise from a producer that exported subject merchandise to the

United States during the POI.  Based on this information, the Department determined that Pujiang

did not meet the eligibility requirements for a new shipper review.  *See* Diamond Sawblades and

Parts Thereof From the PRC, 76 Fed. Reg. 20,317 (Dep't of Commerce Apr. 12, 2011) (final

rescission of antidumping duty new shipper review) ("Rescission").

     Despite never having withdrawn or amended its questionnaire responses, Pujiang

nonetheless claims that the Rescission "was arbitrary, capricious, and an abuse of discretion, not

otherwise in accordance with law, as well as unsupported by substantial evidence" and, further,

claims for the first time here that its submissions to the Department contained errors that

Commerce was required to correct.  Pl.'s Br. in Supp. of Mot. for J. on the Agency R. ¶ 3 (ECF

Dkt. No. 20-1) ("Pl.'s Br.").  Defendant United States ("defendant") fully supports Commerce's

determination because it was "supported by substantial evidence and is in accordance with the

law."  Def.'s Opp. to Pl.'s Mot for J. on the Agency R. 2 (ECF Dkt. No. 23) ("Def.'s Mem.").

---

[1]      The period of review is January 23, 2009 through April 30, 2010.

Court No. 11-00146                                                                Page 3

STANDARD OF REVIEW

"The court shall hold unlawful any determination, finding, or conclusion found . . . to be

unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19

U.S.C. § 1516a(b)(1)(B)(i) (2006).

DISCUSSION

I.    Background

On November 4, 2009, Commerce issued an antidumping duty order on diamond

sawblades and parts thereof from the PRC.  *See* Diamond Sawblades and Parts Thereof From the

PRC & the Rep. of Korea, 74 Fed. Reg. 57,145 (Dep't of Commerce Nov. 4, 2009) (antidumping

duty orders) ("Order").[2]  The Order applies to companies identified by Commerce as having

produced or exported diamond sawblades during the POI and to "all exporters of subject

merchandise not specifically listed."  *Id.* at 57,146.

Because it had not been examined during the POI, Pujiang as an exporter was not assigned

an individual rate during the investigation.  On April 29, 2010, Commerce received a timely

request for a new shipper review from Pujiang, by which the company sought an individual rate.

On June 28, 2010, Commerce initiated the review.  *See* Diamond Sawblades and Parts Thereof

from the PRC, 75 Fed. Reg. 36,632 (Dep't of Commerce June 28, 2010) (initiation of antidumping

duty new shipper review).

---

[2]      The Order covers "all finished circular sawblades" and "semifinished diamond
sawblades, including diamond sawblade cores and diamond sawblade segments."  Order, 74 Fed.
Reg. at 57,145.

Between August and December 2010, as part of the new shipper review, Pujiang submitted

responses to several questionnaires sent to it by the Department.  Def.'s Mem. 3.  In its August 5,

2010 and August 27, 2010 submissions, Pujiang stated that during the POR it had exported subject

merchandise to the United States produced by an unaffiliated producer that had exported diamond

sawblades to the United States during the POI.[3]  Pl.'s Section A Resp. at A-38 (Pl. Conf. App'x

390) ("Pl.'s Sec. A Resp." and "Pl.'s App'x", respectively); Pl.'s Section C Resp. at 41 (Pl.'s

App'x 787) ("Pl.'s Sec. C Resp.").

In December 2010, the Diamond Sawblades Manufacturers Coalition (the "Coalition"),

comprised of U.S. domestic producers of diamond sawblades, submitted comments to the

Department, contending that Commerce should terminate Pujiang's new shipper review because

the company failed to meet the eligibility requirements set forth in 19 C.F.R. § 351.214(b)(2)(ii)

(2010).  Def.'s Mem. 3–4.  In response, Pujiang explained that it "exported subject merchandise to

the United States . . . [pursuant to a] specific request of an unaffiliated customer" and that those

parts were manufactured by . . . a producer that had exported subject merchandise during the POI.

Pl.'s Jan. 10, 2011 Resp. 2–3 (Def. Conf. App'x Tab 2) ("Pl.'s Jan 10, 2011 Resp.").  Pujiang

repeatedly stresses in its filings that the export of the unaffiliated producer's merchandise, was a

"single instance . . . in parts, rather than as a finished product."  Pl.'s Jan. 10, 2011 Resp. 2–3 (Def.

Conf. App'x Tab 2) ("Pl.'s Jan 10, 2011 Resp.").

---

[3]     [[                    ]] is the name of the unaffiliated producer listed in Pujiang's
questionnaire responses.  In its briefs to the Department, Pujiang identifies the company as
[[                                        ]].  It has been abbreviated [[    ]] in both instances.

On March 9, 2011, Commerce issued its notice of intent to rescind the new shipper review

based on its findings that: (1) Pujiang stated in its questionnaire responses that the unaffiliated

producer supplied merchandise[4] that Pujiang exported to the United States, and (2) Pujiang, in

response to the domestic producers' comments, did not contest that it shipped to the United States

subject merchandise produced by the unaffiliated producer.  Mem. of Prelim. Intent to Rescind 1–

2 (Def. Conf. App'x Tab 3).

In March 2011, Pujiang submitted comments contending that its shipment of the

unaffiliated producers' merchandise was "de minimis" and "irrelevant."  Pl.'s Mar. 16, 2011 Resp.

1–2 (Def. Conf. App'x Tab 4) ("Pl.'s Mar. 16, 2011 Resp.").  Pujiang reiterated that it "does not

deny that . . . it exported certain subject merchandise produced by [the unaffiliated producer]

during the period of review," but maintained that Commerce's "position is overly harsh" because

"where [Pujiang] exported subject merchandise to the United States . . . [it] was done at the

specific request of an unaffiliated customer."[5]  Pl.'s Mar. 16, 2011 Resp. at 3.  Pujiang indicated

that the unaffiliated United States customer wished to attach the saw segments to the core

themselves, and" that it "delivered sawblades in parts, rather than as a finished product."  Pl.'s

Mar. 16, 2011 Resp. at 3.  Pujiang urged Commerce to "exercise a modicum of discretion and find

that the [ exported merchandise ] described in the Memorandum is irrelevant to the purpose of the

---

[4]        In particular, the unaffiliated producer provided "fifteen steel cores," which are
component parts of diamond sawblades specifically identified as being within the scope of the
Order.  Mem. of Prelim. Intent to Rescind 1–2 (Def. Conf. App'x Tab 3); Order, 74 Fed. Reg. at
57,145 ("Within the scope of these orders are . . . diamond sawblade cores.").

[5]        Plaintiff appears to believe, without explanation, that the alleged unaffiliated status
of its United States customer is, in some way, a mitigating factor as to whether Commerce should
have terminated the new shipper review.

inquiry at hand." Pl.'s Mar. 16, 2011 Resp. at 1. In response, the Coalition reasserted that

"Pujiang should not be eligible for a new shipper review because it had shipped subject

merchandise from the [unaffiliated producer] and was unable to certify otherwise." Def.'s Mem.

5.

On April 12, 2011, Commerce issued its Final Rescission Notice, terminating the new

shipper review upon finding that Pujiang had exported subject merchandise produced by the

unaffiliated producer, a company which had exported subject merchandise during the POI.

Rescission, 76 Fed. Reg. at 20,318. Therefore, Pujiang failed to meet the eligibility requirements

set forth in 19 C.F.R. § 351.214(b)(2). *Id.*

II.     Legal Framework

Under 19 U.S.C. § 1675(a)(2)(B), Commerce shall, upon request, conduct administrative

reviews "for new exporters and producers." 19 U.S.C. § 1675(a)(2)(B). The purpose of these new

shipper reviews is to determine whether exporters or producers, whose sales have not previously

been examined, are (1) entitled to their own duty rates under an antidumping order, and (2) if so, to

calculate those rates. *See Hebei New Donghua Amino Acid Co. v. United States*, 29 CIT 603, 604,

374 F. Supp. 2d 1333, 1335 (2005). Although the statute is silent as to procedural issues other than

time limits for agency action, the Department has promulgated regulations governing new shipper

review procedures. *See* 19 C.F.R. § 351.214. If the interested party requesting a review "is the

exporter, but not the producer, of the subject merchandise" the party "must" provide: (1) "a

certification that the person requesting the review did not export subject merchandise to the United

States . . . during the [POI]," and (2) "a certification from the person that produced or supplied the

subject merchandise to the person requesting the review that that producer or supplier did not

export the subject merchandise to the United States . . . during the [POI]."  19 C.F.R. § 351.214(b).

While not without question, this requirement seems to be aimed at preventing a producer that

received a high rate during the investigation or a later review from taking advantage of a newly

reviewed exporter's lower rate.

 III.     Commerce's Determination that Pujiang Exported Merchandise from the Unaffiliated
          Producer is Supported by Substantial Evidence

        The Department's determination that Pujiang exported  the unaffiliated producer's

merchandise, and was thereby ineligible for a new shipper review under 19 CFR

351.214(b)(2)(ii)(B), relied on the plaintiff's questionnaire responses.  Those responses stated that

Pujiang had exported subject merchandise manufactured by the unaffiliated producer.  Plaintiff's

Section A Response stated that "[b]esides self-produced diamond saw blades and segments,

[Pujiang] also exported out-sourced cores to the United States . . . .  [T]he export of cores supplied

by [the unaffiliated producer] is very occasional during the POR."  Pl.'s Sec. A Resp. at 390.

Pujiang's Section C Response similarly indicated that "[e]xcept cores supplied by [the unaffiliated

producer], all the other subject merchandises [sic] exported to the United States by [Pujiang] were

manufactured by [Pujiang]."  Pl.'s Sec. C Resp. at 787.  Thus, plaintiff does not dispute that it

represented to the Department that it exported subject merchandise made by a producer that had

shipped subject merchandise to the United States during the POI.

        Instead, plaintiff claims here, for the first time, that the Department acted unreasonably

when it relied on plaintiff's "erroneous categorization" of a shipment as having been products of

the unaffiliated producer.  Pl.'s Reply to Def.'Opp. to Mot. for J. ¶ 21 (ECF Dkt. No. 28) ("Pl.'s

Reply").  In making its argument, plaintiff maintains that Commerce should have both realized

that plaintiff's submissions contained errors, and that the Department, on its own initiative, should

have corrected those errors.  Plaintiff insists that this is the case even though it made no effort to

amend or withdraw its questionnaire responses during the administrative proceedings conducted

by the Department.

Plaintiff contends that its questionnaire responses were erroneous because they

"inaccurately stated the source of one specific shipment of goods."  Pl's Br. ¶ 3, 4 ("Pujiang . . . did

not export any goods from a producer not eligible for [a New Shipper Review].");  Pl.'s Reply ¶ 15

("[T]he shipment at issue contained only products produced by Pujiang.").  Specifically, Pujiang's

new position is that it "did, in fact, produce [the goods previously identified as produced by the

unaffiliated producer], as a special order, and then sell and ship them."  Pl.'s Br. ¶ 23.  Plaintiff

now maintains that the unaffiliated producer was merely "a supplier of materials to Pujiang."  Pl.'s

Br. ¶ 25.  The company's position appears to be that the unaffiliated producer's products were

transformed into Pujiang-produced products as a result of modifications made by Pujiang.  Pl.'s

Br. ¶ 50.  Specifically, according to plaintiff, "the [[        ]] underwent significant modification

from their raw form . . . , including the tensioning and the creation of pinholes. . . , and the fact that

the [[        ]] w[ere] sold as Pujiang . . . products, packaged in Pujiang . . . packaging when

delivered to the unaffiliated customer, and imported into the United States as Pujiang . . .

products."   Pl.'s Br. ¶ 50.

Even if the court were to entertain an argument not made to Commerce,[6] the claim that the

Department should have independently discerned that plaintiff's questionnaire responses were

erroneous and corrected these errors is impossible to credit.  In making its claim, Pujiang first

points to the United States Customs & Border Protection entry summary form ("Form 7501") for

the merchandise at issue, which identifies Pujiang as the manufacturer of the merchandise.  Pl.'s

Form 7501 (Pl's App'x 329).[7]  Considering that the Form 7501 was prepared by plaintiff or on its

behalf, it is hardly obvious that Commerce should have understood that the manufacturer field of

the company's Form 7501 contained correct information and that the plaintiff's questionnaire

responses contained incorrect information.[8]

Pujiang next points to the certification attached to its request for a new shipper review that

incorporated by reference the representations made in that request.[9]  According to plaintiff's

---

[6]        The Department points out that Pujiang failed to exhaust its administrative
remedies by not raising this issue before the Department. *Dorbest Ltd. v. United States*, 604 F.3d
1363, 1375 (Fed. Cir. 2010) ("[P]arties are 'procedurally required to raise their issue before
Commerce at the time Commerce is addressing the issue.'" (quoting *Mittal Steel Point Lisas Ltd.
v. United States*, 548 F.3d 1375, 1383 (Fed. Cir. 2008)).  Because plaintiff's argument fails on the
merits, however, the court declines to reach the exhaustion issue.

[7]        The company also maintains that its position is supported by the fact that the
"multiple shipping documents" it included failed to identify "anyone [but] Pujiang . . . as the
manufacturer or producer."  Pl's Br. ¶ 21.  Plaintiff, however, neglects to mention that, other than
the Form 7501, none of those documents contain any field in which the manufacturer would be
identified.  *See* Pl's App'x 324–29.  Indeed, those documents (two commercial invoices, a
statement of origin, a bill of lading, and a packing list) would not ordinarily include such
information.

[8]        *See Ocean Harvest Wholesale, Inc. v. United States*, 26 CIT 358, 369 n.20 (2002)
(noting that parties cannot expect their desired result when they proffer multiple options without
guidance (citing *People v. Small*, 391 N.Y.S.2d 192, 194 (N.Y. App. Div. 1977))).

[9]        The incorporation by reference contained in these two documents involves a

( continued . . . )

submissions to this court, that certification stated "that none of the merchandise [Pujiang] exported

during the POR had been produced by a company that had exported during the POI."  Pl's Br. ¶ 21.

For plaintiff, its certification, when contrasted with its questionnaire responses, should have

alerted the Department to the presence of errors in the questionnaire responses.  Pujiang, however,

mischaracterizes its certification.  *Compare* Pl's Br. ¶ 21, *with* Request for New Shipper Review

1–11 (Pl.'s App'x 1–11).   The certificatory language actually reads:

> (1)      [Pujiang] did not export diamond sawblades and parts thereof from the
> [PRC] (the "Subject Merchandise") to the United States during the [POI] which ran
> from October 1, 2004, through March 31, 2005;
> (2)      [Pujiang] has never been affiliated with any producer or exporter that
> exported Subject Merchandise to the United States during the POI . . .

Request for New Shipper Review 2.  Thus, Pujiang did not certify that it had not exported subject

merchandise manufactured by a company that had exported to the United States during the POI.

Rather, plaintiff only certified that neither it nor an affiliated producer had exported subject

merchandise to the United States during the POI.  Because the unaffiliated producer is not

affiliated with Pujiang, nothing in the new shipper review request and its certification contradicts

plaintiff's questionnaire responses, thereby failing to indicate that those responses were errors.

*See* Pl.'s Sec. A Resp. A-4.

As to why its questionnaire responses were erroneous, Pujiang contends that Commerce

should have "address[ed] the fact that the [unaffiliated producer's merchandise] underwent

---

( . . . continued )

troubling level of circularity.  The request, dated April 29, 2010, indicates that the certifying
Pujiang employee "makes the following certification, attached as '**Exhibit 1**'." Request for New
Shipper Review 2.  The undated certification, however, states only "that I have read the attached
request for [the] new shipper review, and that the information contained therein, to the best of my
knowledge, is complete and accurate."  Pl's App'x 11.

significant modification from [its] raw form while in the possession of Pujiang Talent . . . and the

fact that [the unaffiliated producer's merchandise] was sold as Pujiang Talent products [and],

packaged in Pujiang Talent packaging when delivered to the unaffiliated customer."  Pl's Br. ¶ 50.

Here, Pujiang apparently argues that although it purchased subject merchandise from the

unaffiliated producer it modified that merchandise enough to transform it into a new article for

which Pujiang would qualify as the "producer" for antidumping review purposes.  Pujiang,

however, points to no record evidence documenting any additional manufacturing that the

unaffiliated producer's merchandise underwent or the manner in which that merchandise was

packaged.  Pujiang's submissions before the Department, unsurprisingly, also fail make mention

of any such additional processing.

Indeed, before the agency, Pujiang never expressly claimed that its submissions were

inaccurate, nor did it ask to submit corrected responses to the questionnaires.[10]  Pujiang's

argument that it sought correction, but did so "inartfully" is unpersuasive.[11]  Pl.'s Reply ¶ 8.

Pujiang bases this claim on certain language in its March 16, 2011 response that the export of the

unaffiliated producer's merchandise was done in an atypical manner.  In particular, Pujiang claims

the merchandise was sawblade parts which it would ordinarily have assembled before importation

if not for the unaffiliated United States customer's request.  Pl.'s Reply ¶ 29.  Pujiang, however,

---

[10]        Accordingly, this is not a case where corrective information was submitted to, and rejected by, the Department prior to issuance of the final determination. *Cf. Fischer S.A. Comercio, Industria & Agriacultura v. United States*, 471 Fed. App'x 892, 895 (Fed. Cir. 2012) ("Commerce is obliged to correct any errors in its calculations during the preliminary results stage to avoid an imposition of unjustified duties." (citation omitted)).

[11]        Were the court to reach it, Pujiang's failure to clearly raise this issue before the Department also supports Commerce's position on exhaustion of administrative remedies.

never explains how these references would alert Commerce that it was claiming that the exported

parts were, in fact, manufactured by Pujiang.  That is, no reasonable reading of plaintiff's

submissions during the underlying review supports the assertion that Pujiang argued before the

agency that its questionnaire responses were inaccurate.  In its briefs to the Department, plaintiff

argued that its exportation of the unaffiliated producer's merchandise should be overlooked, not

that its questionnaire responses indicating that the merchandise was produced by the unaffiliated

producer were factually incorrect.

        Moreover, plaintiffs submissions before the agency repeatedly reaffirm that its

questionnaire responses were factually accurate.  *See* Pl.'s Jan. 10, 2011 Resp. 3; Pl.'s Mar. 16,

2011 Resp. 3.  In its letter of January 10, 2011, Pujaing stated that "[Pujiang] does not deny that in

that one instance it exported certain subject merchandise produced by [the unaffiliated producer]

during the period of review for this [New Shipper Review] — and [Pujiang] was completely

upfront about that instance in its prior submissions to the Department."  Pl.'s Jan. 10, 2011 Resp. 3.

Again on March 16, 2011 it stated that

> [Pujiang] does not deny that in that one instance it exported certain subject
> merchandise produced by [the unaffiliated producer] during the period of review
> for this [New Shipper Review].  Nevertheless, termination of the [review] on this
> basis would result in the unfortunate elevation of form [over] substance. . . . Here,
> [Pujiang] is not acting as a regular exporter of [unaffiliated producer]
> -manufactured merchandise. . . . The sale of [unaffiliated producer]-manufactured
> merchandise [was] a single, isolated instance where [Pujiang] exported subject
> merchandise.

Pl.'s Mar. 16, 2011 Resp. 3

        Therefore, the record on which Commerce made its determination contained two

admissions in plaintiff's questionnaire responses, reinforced by Pujiang's briefs before the

Department, on the one hand, and the manufacturer field of the Form 7501 and the certification, on

the other.  Nothing in the record indicates that Commerce was required to discredit Pujiang's

questionnaire responses in favor of the Form 7501's manufacturer field.  Nor does the certification

actually contradict the answers to the questionnaires.  Indeed, the record supports the conclusion

that the questionnaire response were truthful, rather than erroneous.  Those responses are

substantial record evidence that Pujiang exported the unaffiliated producer's merchandise during

the POR, rendering Pujiang ineligible for a new shipper review.

Moreover, even if the court were to find that the responses were errors, those errors would

not be apparent and Commerce would not have been required to correct them.  Errors not brought

to the attention of the Department prior to the issuance of a final determination must be corrected

by Commerce only where the error is apparent.  *See Alloy Piping Prod., Inc. v. Kanzen Tetsu Sdn.*

*Bhd.*, 334 F.3d 1284, 1292–93 (Fed. Cir. 2003).


IV.     Commerce's Issuance of the Rescission Was Not Arbitrary and Capricious

Pujiang also argues, as it did before the Department, that Commerce's issuance of the

Rescission was so unfair as to render that determination arbitrary and capricious.  Plaintiff states

that "[o]ne simple mistake by [a] small company shouldn't have the kinds of debilitating,

long-range consequences as have arisen from the Final Rescission."  Pl.'s Br. ¶ 46.  In other words,

Pujiang's position is that Commerce acted improperly when it decided to rescind the new shipper

review because Pujiang is not a large company, the sale was a one-time only transaction making up

a very small part of the company's sales, and the company will be now be subject to the high

all-China rate.  Thus, for plaintiff, Pujiang's concession—that it sold subject merchandise from a

manufacturer who exported subject merchandise during the POI—should have been disregarded

by the Department.  Notably, Pujiang does not argue that the Department exceeded its authority

when it promulgated 19 C.F.R. 351.214(b), or that the Department otherwise failed to comply with

that regulation when it issued the Rescission.  Pujiang maintains, instead, that Commerce's

Rescission of the new shipper review has a practical effect that runs contrary to the overall purpose

of the antidumping laws because the Rescission imposes an "almost punitive" rate "with no

relationship to the evidence provided" during the review.  Pl.'s Br. ¶ 46.

Before Commerce, Pujiang argued that the shipment was "*de minimis* activity" which

should be ignored because Pujiang was "not acting as a regular exporter of [unaffiliated

producer]-manufactured merchandise."  Pl.'s Jan. 10, 2011 Resp. 2, 3; Pl.'s Mar. 16, 2011 Resp. 2

("The Department . . . treats that *de minimis* activity as dispositive, when in equity, that

[exportation] should not change [Pujiang's] status as an appropriate new shipper, subject to the

current review.").  Pujiang argues that it "did not make any sales of [the unaffiliated producer's]

merchandise for the purpose of selling [the unaffiliated producer's] merchandise," but rather to

accommodate a particular unaffiliated United States customer on a one-time basis.  Pl.'s Jan. 10,

2011 Resp. 4; Pl.'s Mar. 16, 2011 Resp. 2.  Thus, the Department should exercise discretionary

authority to ignore that one sale.  Pl.'s Jan. 10, 2011 Resp. 4; Pl.'s Mar. 16, 2011 Resp. 2 ("The

Department should exercise its discretion and allow the [review] of [Pujiang] to proceed to

conclusion, so that its ultimate purpose can be reached.").

Commerce declined to ignore the sale of the unaffiliated producer's merchandise because

under the regulation "there is no requirement . . . to consider the relative volumes sourced . . . .

[T]he relative volume of subject merchandise that [Pujiang] sourced from [the unaffiliated

producer] is irrelevant to the certification requirement."  Mem. of Prelim. Intent to Rescind 2 (Def.

Conf. App'x Tab 3 at 4).

The court finds that Commerce did not err by refusing to ignore Pujiang's shipment of

subject merchandise produced by the unaffiliated producer.  The Department is not free to

disregard regulatory requirements simply because a non-complying petitioner will suffer adverse

consequences as a result of its non-compliance.  "An agency must follow its own regulations."

*United States v. UPS Customhouse Brokerage, Inc.*, 575 F.3d 1376, 1382 (Fed. Cir. 2009) (citation

omitted).  Commerce interpreted the regulations at issue as providing "no basis for overlooking the

requirements set forth in" 19 C.F.R. § 351.214(b)(2)(ii)(B), and it is difficult to see how the

Department is wrong.  Rescission, 76 Fed. Reg. at 20,318.

The regulation plainly requires that importers who are not the producers of subject

merchandise "must" provide "[a] certification from the person that produced or supplied the

subject merchandise to the person requesting the review that that producer or supplier did not

export the subject merchandise to the United States . . . during the [POI]" as part of its request for

a new shipper review.  19 C.F.R. § 351.214(b)(2)(ii)(B).  Pujiang points to no statute or regulation

giving Commerce discretion to ignore this requirement.  The Department is bound by the

"'familiar rule of administrative law that an agency must abide by its own regulations.'"  *Since*

*Hardware (Guangzhou) Co. v. United States,* 35 CIT __, __, Slip. Op. 11-146, at 24 (2011)

(quoting *Fort Stewart Sch. v. Fed. Labor Relations Auth.*, 495 U.S. 641, 654 (1990)).

The facts of this case are such that Pujiang did not and could not truthfully provide the

certification required by 19 C.F.R. § 351.214(b)(2)(ii)(B).  Moreover, because Pujiang made no

effort to correct or withdraw its questionnaire responses, and made no effort before Commerce to

argue that its responses were erroneous, the record is not in its favor.  Accordingly, Commerce's

determination that the new shipper review must be rescinded "because [Pujiang] could not produce

a certification that none of the merchandise it exported during the POR had been produced by a

company that had exported during the POI," and that it had "no basis for overlooking the

requirements" of 19 C.F.R. § 351.214(b)(2)(ii)(B) was not arbitrary or capricious.  Rescission, 76

Fed. Reg. at 20,318.


## CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

ORDERED that plaintiff's motion for judgment on the agency record is denied,

Commerce's Final Rescission is sustained.


                                                               /s/ Richard K. Eaton
                                                                Richard K. Eaton


Dated:  May 3, 2013
        New York, New York